UNITED STATES of America, Plaintiff,

v.

Seymour S. HINDMAN, Defendant.

Civ. A. No. 450-59.

United States District Court
D. New Jersey.
Jan. 15, 1960.

Chester A. Weidenburner, Newark, N. J., U. S. Atty., by Harold Weideli, Jr., Asst. U. S. Atty., Rahway, N. J., for plaintiff.

Aaron B. Weingast, Irvington, N. J., for defendant.

HARTSHORNE, District Judge.

The defendant is in the business of selling military uniforms to military personnel. On March 13, 1957, after a hearing under the Federal Trade Commission Act, as amended, 15 U.S.C.A. §§ 41–58, wherein the defendant was charged with violating Section 5(a) of the Act, as amended, 15 U.S.C.A. § 45 (a), the Commission issued a cease and desist order against the defendant, and others, which was duly served on the defendant on March 21, 1957. This order provided, as far as pertinent:

> "It is ordered that * * * Seymour S. Hindman * * * directly or through any corporate or other device in connection with the offering for sale, sale, or distribution of military clothing in commerce * * * do forthwith cease and desist from representing, directly or indirectly: * * * that the military clothing offered for sale or sold, or any of it, is custom made * * *"

The defendant admits that thereafter he made certain sales of military clothing in commerce and that the uniforms so sold bore the label "custom-tailored." Accordingly, plaintiff Government filed its civil complaint to recover the civil penalties for such violations as provided by the above statutes. After answer filed, plaintiff and defendant each thereupon moved for summary judgment, these motions having been duly heard.

■ There having been no appeal from the above cease and desist order, it stands as *res judicata*. United States v. Willard Tablet Co., 7 Cir., 1944, 141 F.2d 141, 152 A.L.R. 1194; United States v. Piuma, D.C.S.D.Cal.1941, 40 F.Supp. 119, affirmed 9 Cir., 1942, 126 F.2d 601, certiorari denied, 1942, 317 U.S. 637, 63 S.Ct. 28, 87 L.Ed. 513.

The defendant now concedes that he was engaged in commerce as defined in the statute and withdraws his Fifth Affirmative Defense, except as it may apply to the mitigation of damages.

However, the defendant makes two points in support of his motion for summary judgment, (1) that he made no representation whatever subsequent to the entry and service of such cease and desist order, i. e., that the label on the uniforms sold could not constitute a representation of any kind, and (2) even if such label constituted a representation, the meaning of the representation that such uniforms were "custom-tailored" substantially differed from the forbidden representation that such uniforms were "custom-made."

■ As to the first point, it should be noted that not only is the defendant ordered to cease and desist from making the forbidden representation, either "directly or indirectly", but that such representation is forbidden in connection either with the "offering for sale * * of military clothing", or with the "sale * * * of military clothing", or with the "distribution of military clothing." In other words, the defendant is required to cease and desist from making the forbidden representation not only in connection with the entry into the contract for the purchase and sale of the uniforms, and this either directly or indirectly, but he is also forbidden to make such representations in connection with the actual sale and also in connection with the distribution of the military clothing. Obviously, if the placing of a label on a military uniform is a representation at all, it is a representation when the sale of such clothing is made or when distribution of such clothing on such sale occurs. Furthermore, that the use of a label in connection with the sale and distribution of goods is a representation as to the nature of the goods sold or distributed is not only common sense but common law. United States v. Vitamin Industries, Inc., D.C.D.Neb.1955, 130 F.Supp. 755; Hunter Milling Co. v. Satterwhite, Tex.Civ.App.1933, 60 S. W.2d 316, 319.

■ Turning to the defense that the label "custom-tailored" does not mean "custom-made", and thus does not violate the cease and desist order, we must

**928**

bear in mind the principle that the meaning to be given such representations as these is not the meaning which would be attached to them by experts, but by the average man who would be likely to purchase the articles in question and to whom those representations are thus made. Further, if the term used to this average purchaser means substantially the same as does the forbidden term, so that the public has been misled, contrary to the order, a violation exists. Aronberg v. F.T.C., 7 Cir., 1942, 132 F. 2d 165; United States v. Piuma, supra.

In Funk & Wagnall's New Standard Dictionary, "custom-made" is defined as "made to order, as distinguished from ready-made." In Webster's New Collegiate Dictionary, 2nd Edition, the word "tailored" is defined as "cut and fitted by a tailor or as if by a tailor, (a) custom-made; (b) characteristic of a tailor's work." So it might well seem that "custom-tailored" would mean not ready-made, but made to order or "custom" and by a tailor, i. e., "custom-made."

██ On the other hand, the defendant represents that he can prove that, as applied to military uniforms at least, "custom-tailored" means that the uniform is ready-made, but is given particularly fine stitching or other tailoring finish, which makes it a substantially different garment from ready-made military uniforms. Since the plaintiff Government did not require the defendant to verify his ability to produce evidence to that effect, it is clear that the defendant should be given the opportunity to produce such evidence, simply to show that his label representation of "custom-tailored" did not constitute a representation that the uniforms in question were "custom-made", as understood by the purchasers of such uniforms in the military service.

Thus defendant's motion for summary judgment must be denied and plaintiff's motion for summary judgment granted on the issue of whether a representation had occurred, but denied on the meaning of "custom-made." A jury trial will occur on the limited issue as to whether or not the label term "custom-tailored" on defendant's uniforms means to their purchasers that they are "custom-made", and if a determination of liability results, on the issue of damages. Leimer v. Woods, 8 Cir., 1952, 196 F.2d 828.

An order may be entered accordingly.